UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMIE COOK, on his
own behalf and others similarly
situated,

    Plaintiff,

vs.

    Case No.: _____

ALBERTSON'S, LLC, a Foreign
Limited Liability Company,

    Defendant.
_____/

## COMPLAINT & DEMAND FOR JURY TRIAL

Plaintiff, JAMIE COOK ("Plaintiff"), on his own behalf and on behalf of those similarly situated ("Plaintiffs"), files this Complaint against Defendant, ALBERTSON'S, LLC ("Defendant") and states the following:

### INTRODUCTION

1. This is an action for failure to pay overtime wages pursuant to 29 U.S.C. § 216(b) and 29 U.S.C. § 207(a).

2. In 1937, President Franklin D. Roosevelt introduced to Congress a piece of New Deal Legislation related to minimum wage and hour standards in an effort to pull this country out of the Great Depression. In doing so, he charged Congress with the following:

> To protect the fundamental interests of free labor and a free people we propose that only goods which have been produced under conditions which meet the minimum standards of free labor shall be admitted to interstate commerce. Goods produced under conditions which do not meet rudimentary standards of decency should be contraband and ought not to be allowed to pollute the channels of interstate trade.

81 Cong. Rec. 4961 (1937).

3. The FLSA was signed into law on June 28, 1938, with overwhelming support from both Democrat and Republican leaders. The motivations behind the FLSA ring just as true in today's economic turmoil as they did in the 1930's, as the FLSA's minimum wage and maximum hour provisions serve the dual purposes of lessening the costs of doing business and spreading work among the masses.

4. As explained by Justice Reed, "[i]n a period of widespread unemployment and small profits, the economy inherent in avoiding extra pay was expected to have an appreciable effect in the distribution of available work." *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 578 (1942). In other words, the FLSA's overtime requirement was not intended to force employers to pay *more* per hour but rather to ensure that companies paid *less* by incentivizing them to employ more people.

5. The Defendant in this case violated the FLSA by failing to pay its employees the overtime wages mandated by Congress. Specifically, Plaintiff, and other hourly employees, were forced to work through their lunch breaks each week without proper overtime pay.

6. This lawsuit is intended to cover all hourly employees of Defendant who were subjected to Defendant's automatic lunch break policy and who did not receive proper overtime compensation during the statutory period.

## STATEMENT OF FACTS

7. This Court has original jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 as they arise under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*

8. Venue is proper as the acts and omissions giving rise to Plaintiffs' claims occurred in Sarasota County, Florida, among others.

9. Defendant is a Foreign Limited Liability Company based in Boise, Idaho.

10. Defendant is in the business of selling groceries.

11. Defendant also offers pharmacy, deli, floral, greeting card, bakery, and butcher-block services to its customers nationwide.

12. Defendant's first grocery store was opened in Boise, Idaho in 1939.

13. Today, Defendant operates over six-hundred (600) stores and employees more than sixty-thousand (60,000) workers. *See* Defendant's website; *available at* www.albertson's.com/our-company/traditions-history/.

14. Defendant does business throughout the State of Florida.

15. One or more of the products sold by Defendant are transported to Florida from outside Florida.

16. One or more of the products sold by Defendant are manufactured outside Florida and transported to Florida for sale.

17. Defendant sells goods in the flow of interstate commerce (i.e. its pharmaceutical and grocery products).

18. Defendant transports and/or causes to be transported goods in the flow of interstate commerce (i.e. its pharmaceutical and grocery products).

19. In 2010, Defendant grossed more than $500,000 per year in gross sales or business done.

20. In 2011, Defendant grossed more than $500,000 per year in gross sales or business done.

21. In 2012, Defendant grossed more than $500,000 per year in gross sales or business done.

22. Defendant employed two or more employees engaged in interstate commerce as Defendant's employees regularly handled and worked on goods that were moved in the flow of interstate commerce – i.e. Defendant's grocery and pharmaceutical products.

23. Defendant is an enterprise as defined by the Fair Labor Standards Act.

24. Defendant hired Plaintiff COOK in April 1998.

25. Plaintiff COOK worked for Defendant until approximately June 2012.

26. For the duration of his employment with Defendant, Plaintiff was an hourly-paid Assistant Manager.

27. During his employment, Plaintiff regularly worked more than forty (40) hours during one or more work weeks.

28. Defendant required Plaintiff and other hourly-paid workers to clock out for a thirty (30) minute lunch breach each shift; however, Plaintiff and his coworkers were regularly required to work through their lunch breaks.

29. Plaintiff and Defendant's other hourly-paid workers were subject to a common policy and practice of failing to pay wages for time worked during lunches.

30. As a result of Defendant's policy and practice of requiring Plaintiff and other hourly workers to work through their lunch breaks, Defendant deprived Plaintiff and others similarly-situated of the overtime wages mandated by federal law.

31. Defendant failed to pay Plaintiff and others similarly-situated time and one half their regular hourly rates for all of their overtime hours worked each week.

32. The persons similarly-situated to Plaintiff for the purposes of this action are all other hourly-paid workers who worked for the Defendant during the applicable statutory period, who were told to clock out for lunch, but who actually performed work during their lunch breaks and who were subject to Defendant's company-wide policy and practice of failing to pay proper overtime compensation each week.

33. Plaintiff and all others similarly situated are individually covered by the FLSA by virtue of their regular handling of goods within the flow of interstate commerce (i.e. Defendant's groceries and pharmaceutical products) as well as their regular interaction with interstate clientele and their regular use of interstate telephone, fax, and internet in the performance of their duties.

34. Defendant did not maintain accurate records of all the hours worked by Plaintiff and others similarly situated.

35. To the extent they exist, Defendant is in exclusive possession of the majority of the records reflecting the amounts paid and hours worked by Plaintiff and others similarly situated.

36. Defendant did not rely upon any Department of Labor Wage and Hour Opinions in creating the pay structures of Plaintiff and others similarly situated.

37. Defendant did not rely upon the advice of counsel in creating the pay structures of Plaintiff and others similarly situated.

38. Defendant knew its conduct violated the Fair Labor Standards Act or acted in reckless disregard for its provisions as Defendant was, at all times relevant, in possession of data (including electronic and metadata) reflecting the actual hours worked by Plaintiff and other similarly-situated employees.

## COUNT I– UNPAID OVERTIME WAGES

39. Plaintiff reincorporates and adopts the allegations in paragraphs 1-38 above.

40. Plaintiff COOK was an employee of Defendants.

41. Defendant was Plaintiff's employer as defined by the FLSA.

42. Defendant is a covered enterprise as defined by the FLSA.

43. Plaintiff and others similarly situated are individually covered by the FLSA.

44. Plaintiff and other similarly-situated hourly employees regularly worked in excess of forty (40) hours per week for Defendant.

45. Plaintiff and other similarly-situated hourly employees regularly worked through their lunch breaks.

46. Defendant failed to pay Plaintiff and others similarly situated time and one half their regular hourly rate for all hours worked in excess of forty (40) each week in violation of Section 7(a) of the FLSA.

47. Defendant had a uniform policy and practice of failing to pay their employees proper overtime compensation.

48. Defendant had a uniform policy and practice of failing to pay Plaintiff and other hourly workers for work performed during their lunch breaks.

49. Plaintiffs suffered harm and continue to suffer harm in the form of unpaid wages as a result of Defendant's violations.

50. Plaintiffs are owed additional compensation in the form of unpaid overtime wages.

51. Defendant's violations of the FLSA were and continue to be willful.

WHEREFORE, Plaintiff, on behalf of himself and all similarly-situated, requests conditional certification of a class of all of Defendant's hourly employees who were subject to Defendant's unlawful pay policy pursuant to Section 216(b) of the FLSA; an order permitting Notice to all potential class members; a declaration that Defendant's policy of failing to pay for overtime hours worked violates the FLSA; entry of final judgment in favor of the Plaintiffs and against Defendant; as well as payment of all wages owed, an equal amount in liquidated damages, payment of attorneys' fees and costs, and all other relief as required by 29 U.S.C. § 207(a) and 216(b).

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 3rd day of September, 2012,

Christina J. Thomas, Esq.
Florida Bar No.: 0074846
cthomas@forthepeople.com
Bernard R. Mazaheri, Esq.
Florida Bar No.: 643971
bmazaheri@forthepeople.com
Morgan & Morgan, PA
20 N. Orange Ave., 14th Floor
Orlando, Florida 32801
Tel: (407) 420-1414
Fax: (407) 245-3487

*Counsel for Plaintiffs*